Good morning, my name is Justin Stolpes and I'm here from Bozeman, Montana. May it please the court, I'd like to reserve three minutes of my time for rebuttal. Counsel, at the outset, this case is procedurally very unusual to me and I guess I don't really understand why this wasn't just a suit for damages under the declaratory judgment in federal court. Well, Your Honor, the four corners of this complaint, I think, would encompass a bad faith action under Montana's UTPA. We allege that federal failed to comply with its statutory. I understand what you're alleging, but there was just such a simple way to get this, you know, tried in Montana. I really don't understand it, but maybe it doesn't matter. I think going back, it's important to remember how this case originally got filed. This case was actually originally filed before settlement of the underlying action. We filed this declaratory judgment action because the plaintiffs had been sending 16 months worth of letters to federal insurance explaining that liability in this case was reasonably clear. And please, this is a wasting policy. Please let us know how much is left in that policy so we can make an informed decision on whether or not we can offer releases and whether or not we can settle this case. After 16 months of no response to these letters giving us the answers that are required to be given to us under Montana law, we filed a declaratory judgment action asking federal to comply with the UTPA in handling our claim. One month later, federal offered the policy limits and we settled this case. So originally, that's why this declaratory judgment action was filed. Well, after the fact, it seems rather difficult if it's not just an action for damages. And I say that because it appears to me, and I've never practiced in Montana so I may be completely off base here, but it appears to me that under Montana law, both statutory and common law, that for breach of the duty of good faith that you're talking about, reformation of the contract is not estoppel is not available. Am I wrong about that? I believe so, Your Honor. I would, under common law, bad faith in Montana and probably the cardinal case in Montana would be the Brewington versus employer, employees fire insurance. That explains that insurance companies do owe a duty of good faith and fair dealing to the claimants. And that if a breach of this common law duty of good faith, the third party claimant is justified in seeking remedies and seeking remedies for seeking compensation for that breach. Okay. Well, compensation is different and the compensation is damages. And it seems to me what you're saying here is we know that you, insurance company, have already paid out your contractual limits, but we want you to pay more than your contractual limits under the policy. That seems to be your theory. It's a very, I guess I just am having conceptual difficulties that may be mine alone, but their contract is not with you. Their contract is with the employer, right? Yes, correct. And they paid the employer the policy limits, 100% of the policy limits. Well, they paid the claimant 60% and they paid the claimant 60%. But their contract with the employer was fulfilled. You as third parties are unhappy with the way in which it happened, but vis-a-vis the employer, they have not breached the contract. Sure. And this highlights something that the district court overlooked in reviewing this case. The district court did look at what you're duty owed to the insureds. And that duty is not extinguished. However, there is a concurrent duty of good faith and fair dealing. And the Coleman case is instructive here. The duty of good faith and fair dealing owed to claimants requires that an insurance company handle its claims with a responsible claims resolution practice, which minimizes harm that may be done to third parties. In December of 2007, nearly a year before the settlement was finally approved, Federal Insurance and its insureds both unanimously came to an agreement to accept plaintiff's claim and to pay the full policy limits in exchange for a release. When was that? I'm sorry? When was that? On December 18th was Federal's Internal Settlement Committee meeting, which Federal's manager... That's in 2007? 2007, correct, Your Honor. And the eventual, the mediation occurred in August of 2008. And that eventual payment was in... So all of this correspondence where they're getting advised by the lead lawyer, ostensible lead lawyer, saying the liability isn't clear. You're saying that as of December 18, Federal had decided, notwithstanding that advice, that they would tender the full policy limits to claimants to settle all claims with answering all... That would mean releases of the two individuals, separately represented individuals and all of that. Correct. Correct. On December 18th, they decided to accept the claim and to pay the full policy limits. What's the site on that one? It's excerpts of record... Excuse me. Excerpts of record 18. 18.4, the recommendation that we consent to plaintiffs sending the proposed settlement offer, offering the remaining policy limits. And there's various correspondence on either side of that date of December 18th, in which the plaintiff can request authority to settle this claim for policy limits. And afterwards, when the insurance company said, yes, please do, offer the remaining limits to these people. So essentially, Your Honor, what we're asking this court to determine is whether or not it's reasonable for an insurance company to pay nearly two percent of the wasting policy on defense costs, 400,000 of which came after the insurance company and the insureds came to unanimous decision to settle plaintiff's claim, to accept the liability for that claim, in fact. And again, so what's the declaratory relief that you want? The relief we would be asking for, Your Honor, is to reverse and remand and in this case is unenforceable because federal failed to comply with its duties. That gets me back to Montana law, because I don't see how under Montana law, you can declare a part of a contract unenforceable. That's essentially a reformation of the contract is what you're seeking. And I statute seems to say, in a situation such as yours, that after the settlement of the claim, you have a year within which to file a lawsuit that will allow you to gain damages. That is, if they should only have paid out 20 percent instead of 60 percent, the other 40, I guess, gets paid out to your clients. But I see no provision for just reformation. That's what puzzles me so much about this case, is you filed it ahead of time. I understand that under Montana, you couldn't do it yet, because the statute says you have to wait until the claim is paid. But now what? Under Montana law, all you can get is damages, but that's not what you're asking for. Well, in a way it is, Your Honor. Well, it isn't. You're asking for a declaratory judgment, period. And that's what the complaint says. And it's just very odd to me. I'm the only one, maybe, who's struck by the oddity of it. Your Honor, if this case were remanded to the district court, at a minimum, we would like to sort out these tribal issues and material fact as to whether or not federal did violate the UTPA and Montana law when it handled the plaintiff's claim. And if it did, we would like to at least have a reasonableness hearing on those fees that were expended, the two-thirds of this policy that went to defense counsel instead of to these people who lost the entirety of their retirement funds. So I think that the four corners of the complaint would encompass a bad faith action in this case. And there are tribal issues and material fact regarding whether or not federal did breach its duties under the UTPA. For example, under Montana law, under the UTPA 3318-204, subsection 4, an insurer is required to conduct a reasonable investigation of a plaintiff's claim. Now, the district court agreed that the reasonableness of an investigation is ordinarily a question for the jury, and he cited Larang v. Fortas. However, the district court held that no jury could determine that defense counsel's investigation was inadequate or not reasonable. And we believe this determination should be reversed because even federal complained that the investigation conducted by defense counsel was not adequate and was not reasonable. At excerpts of record 19.2, in response to defense counsel's investigation, federal specifically stated that it needed much more information before it could properly evaluate plaintiff's claims. It specifically wrote to counsel that it needed... What's the date of that? The date, I believe, is... Let me check. November 15th of 2007. That's gun check to defense counsel? Correct, Your Honor. Mr. Guncheck, who was adjusting the plaintiff's claim... I have that as 19.1, is that... Well, 19.1 would be the beginning of the letter. I apologize, Your Honor. The 19.2 would be the substance of what I'm talking about. Oh, I see what you're saying. Okay. And Mr. Guncheck asked defense counsel in response, after receiving their investigation, he asked, what was done improperly in the Tidyman's business transaction called the super value deal? He asked, what were the respective roles of the insureds? And in fact, I'm just reading here from the record, it states, however, your letter makes it clear that I need much more information before I can properly evaluate this matter. Even the investigation completed by defense counsel was inadequate, according to federal. They asked questions to have these flushed out. The second question, what were the respective roles of the insureds? Had that question ever been answered, federal would have learned that its insureds actually were members of the administrative committee who did exercise discretion under ERISA and can be held liable for their misrepresentations in various documents that... Essentially what happened, they sought out an investment counselor, Zachary Scott, to determine what would be the best course of action for this company. And Zachary Scott recommended against the Tidyman's super value deal. They represented to their employees that Zachary Scott, in fact, recommended... Remind me when the complaint was filed. The complaint was filed... The underlying complaint, not the declaration, but the... The underlying complaint, Your Honor, was filed in January of 2007. We made our initial demand nine months later for policy limits. And at that point... That would have been in September? In September, correct, Your Honor. Nine months later... So this letter you're citing is in November. Correct. So 11 months after we filed the complaint is when this letter, which came 11 months after the filing of the... Well, I know, but... Okay. But your first settlement demand was in September? Yes. That's... There's a letter from Munding to Gentryk, isn't there, on the 17th? Of September. Yes, there is, Your Honor. And in that letter... What you're saying is, if one goes through this correspondence, as I've done, not with great detail, but looked at the flow here, there seems to be quite a bit of traffic between Federal Claims Adjuster and plaintiffs... I mean, the Defense Council. I would agree. And then there's back and forth, and then there's a second amended complaint that got filed, and they're saying, now you've screwed everything up because you put more policies on the table, and new defendants, and so on and so forth. Sure. And the second amended complaint added directors and officers' claims against these insureds and against other defendants. It had no bearing on the ERISA issues in this policy... In this case... Because that's what your argument is, that this is all fact issues that should be going to a jury? Absolutely, Your Honor. Yes, there are factual issues regarding whether or not number one, a reasonable investigation was conducted. Number two, whether or not Federal communicated with the plaintiffs in accordance with their obligations under Montana law. And number three, plaintiff's expert, John Morrison, the former Insurance Commissioner of Montana, issued an opinion in this case, an expert opinion, and he did find that Federal breached its duties under law and violated the Montana UTPA. I haven't researched this in depth, but my understanding is that UTPA claims are not actionable by third parties for... On the duty to communicate or to communicate grounds for denying a claim. Is that right or wrong? On the... That is correct. However, the mandates in the UTPA are a standard of care. And under a common law, bad faith action, when the standard of care has been breached for an insurance company, then a claimant can hold the insurance company responsible for breaching the standard of care set forth in the UTPA. And the Coleman case says that. Thank you. I'm sorry. Coleman? Coleman. Construction versus Diamond Insurance Company, Your Honor. Okay, thank you. Thank you. Good morning. May it please the court. My name is Gilbert Jensen from Music Peeler and Garrett, and I'm representing the Apelli Federal Insurance Company. Also present in the courtroom is my co-counsel from Montana, Kent Coulin from Moulton Bellingham. Let me ask you a question about the relationship between the Montana statute and this declaratory judgment action. The statute permits certain claims to be brought by third party beneficiaries, even though they are not the insured. And it also imposes a number of duties on insurance companies. And for the purpose of my question, I want you to assume, even though I know you do not concede, that there's a factual issue as to whether there's been a breach of some of those duties that a third party can get damages for under Montana law. For example, I think the reasonable investigation prong is one that a third party can sue for. If we were to send it back, and if the district court said, okay, there's been a breach of this Montana statute, then what? What happens? Is there any other relief, or is that it? It's just a declaration, and there they are, they feel better, or what happens? That's a very difficult question to answer, as being the party who is not prosecuting the claim. As you pointed out in prior questions, this is a declaratory judgment action. And there's a disconnect between what is being sought, a declaration that a portion of the policy is not applicable, versus what is being alleged that was done or not done by federal insurance company. Well, yeah, there are sort of two parts. Well, the complaint in this case is a little bit ambiguous in that regard, but I guess it's now too late for a state claim to be filed, I think. There's a one year statute of limitations after the settlement. That's correct, Your Honor. So it's hard for me to see what relief could possibly be given to the point of here. This probably goes back to the history of the case again, the fact that as the case was, the underlying case was progressing toward trial or resolution, this declaratory judgment action was filed both against federal insurance company and against National Union to compel compliance with the Uniform Trade Practices Act in Montana, which is unusual in itself to seek a declaratory judgment that a party comply with the law. At that point in time, the primary thrust against federal was that the defense within limits provision of the insurance policy should be void as a matter of public policy in Montana. That claim has been dropped. Right. So what we're left with really is, in essence, it looks to me like a claim for damages, saying you should have known a lot sooner that you needed to settle this so that the defense piece of this was a lot smaller and the claimants got more. I mean, that's the essence of it. And assuming that's right, assuming that's right, I still don't see where do we go from here? Theoretically, how would you write? If you were writing for the court, what would you say? Theoretically, there's no damage element in the plaintiff's claim. And so what could be done with this case, even if federal did something incorrect, there is no declaration that can actually be prepared or with respect to this particular claim. There is no relief that could be obtained that is hinted at by the plaintiff's briefs, which is give us the extra money that was paid on defense costs. That just is not in the nature of a declaratory judgment action where what is being sought to be declared is that there was a failure to comply with some provisions of Montana law. So, in other words, what you're saying is even if we remanded the case and indicated that there are material issues of fact and dispute, and therefore a summary judgment should not have been granted, we would still be faced with the question what kind of relief could be provided by the district court? That's correct, Your Honor. One other thing I'd like to just point out, because it's not covered in the briefs, is the issue of the amendment to the complaint. As Judge Fischer had asked questions about plaintiff's comments concerning federal insurance had agreed to commit its policy limits, I'd like to go back to the exhibit that was referred to. In particular, it's at excerpts of record number 18, and the court was pointed out to the statement at 18.4. What's the date on that? This is a draft committee memo that is... 12-19-2007. Correct. And at the bottom of 18.4, it does state, I recommend that the defense be given authority to offer the remaining limits. And that's what the claims adjuster, Mr. Guncheck, was recommending to the committee. But it also gives the recommendation is this case was going to cost a bundle to defend. It is a policy with a defense within limits provision, and given the budgets that have been prepared by defense counsel, the entire $1 million limit of this policy could be expended before trial, leaving our insurance with no protection. And I'd like to point out at the page before, which is 18.3 of excerpt of record 18, it states at the bottom of the page, upon receipt of this letter, we engaged defense counsel in discussions regarding the viability of plaintiff's claims and plaintiff's chances of success on the merits. These are the insureds. Those are the plaintiffs you're talking about in this paragraph. No, these are the plaintiff's letter to federal demanding policy limits. Then federal engaged the defense counsel for the insureds in discussions about that demand. We were advised by all concerned, that is defense counsel, that the complaint had no merit. And in fact, some or all of the plaintiffs were actively involved in advocating the super value transaction. So the complaint about the super value transaction and the fact that Tidyman's had gone ahead and been involved in the super value transaction was something that the underlying plaintiffs had actually been involved in and had approved. It goes on to point out in the same committee recommendation by Mr. Gunshick, that the costs of defending for up to four sets of lawyers would be much greater. This is toward the bottom of 18.4, would be much greater than the policy limits. Then we did, meaning federal insurance company, did at its committee meeting decide this case will commit the $1 million policy limits toward resolution of the case in recognition of the defense expenses that were going to be incurred, not because liability was reasonably clear. Then within two days of the time that decision was communicated to defense counsel, plaintiff in the underlying case amended their complaint, December 31, 2007. And you heard earlier that it brought in a new cause of action against the directors and officers of Tidyman's. And that is correct. What has not been discussed in the briefs that I wanted to bring up though, is our policy, the fiduciary liability policy, which is at the SER Exhibit 1, has an allocation provision. This is typical in small company directors and officer package policies, which the forefront policy was. And at SER 1.11 is the allocation provision in Section 10. That requires when there are claims asserted against an insured person that would be covered, and there are also claims against an insured person that would not be covered, this policy pays 100% of all defense costs. So all the defense costs would be allocated to the covered portion of the policy. It didn't matter if it was a D&O claim in the second claim for relief. The defense expenses to the extent an insured person was involved would nonetheless be allocated to this policy. So at that point in time, our insureds were facing the proposition, they had a complaint against them, they had two claims for relief asserted against them, and they had defense coverage available to them under the fiduciary liability policy. One of the things that Federal had to deal with in this case is the fact that our policy has a consent provision. We cannot settle a case without the consent of our insured. Our insureds, even though we gave them the authority to offer the policy limits in settlement, did not consent to a settlement unless they got a complete release. And that is the source of all of the ongoing correspondence and attempts to try and find out what plaintiff would take to go away that transpired from the beginning of January through to the mediation that took place in early August of 2008. During that entire time period, we had offered or authorized our insureds to use the entire policy limits that is remaining after the defense expenditures to attempt to settle the case. And it did settle, but it wasn't until August 11 of 2008. With respect to the questions that were asked concerning the investigation done by defense counsel and how Federal insurance company, the claims examiner, concluded that the investigation was lacking. This is sort of a catch-22, to use a phrase that was used in the earlier argument today. Here, the claims examiner gets reports from defense counsel outlining all of the potential exposures and what the comeback arguments are and that type of thing. And the claims examiner didn't just put that report in the file and do nothing further. He started asking questions. Well, what about this? What about that? He did what a claims examiner should do in any state, including Montana. He questioned the information he was getting. He didn't just sit back and let it go as received. And he got further information. It's documented in the correspondence that continues on between the Federal insurance company claims adjuster and the defense counsel that went on continuously. And he questioned, why haven't you given the policy limits? Why haven't you completed a settlement? And he got back the response, we don't know what plaintiff is seeking right now. They're now demanding policy limits of ten different policies. They're not willing to give releases. And that goes back to our consent provision. We're attempting to settle in good faith, even though, from our perspective, liability was not reasonably clear. But we cannot do it without the argument that's being made that the case should be remanded to the district court for a hearing or a trial on the question of reasonableness. On the reasonableness of defense costs or the reasonableness of our activity, with respect to our activity, we followed the investigation or we relied on the investigation of our defense counsel. And we accepted their conclusions with questioning that liability was not reasonably clear. And there were elements that would be required for trial. It is not a reasonably clear liability case. So we had no duty under the Montana statute to attempt to effectuate settlement. And in that regard, the ability to rely on the investigation being done by defense counsel is something that has already been established within the state of Montana by the Madden case, which ended up being appealed to the Ninth Circuit and being the insurance company to conclude that the investigator has done something totally improper. Then the investigation that is being done by defense counsel can be relied on. And that's what we did. With respect to, are there issues of fact in the underlying case? Were there differences of opinion as to whether or not the fiduciaries had liability? Yes, there were. There were factual issues in the underlying case. And I'd like to just point out to the court the Giambra case, which is the Montana Supreme Court, which points out that if there are factual issues in the underlying case, then liability is not reasonably clear. Liability is not reasonably clear, then we do not have, the federal insurance company does not have a duty to attempt to effectuate a settlement. The Giambra site is 318 Montana 73. I see my time is about up if there are no questions. Well, there may be but none that we can articulate at the moment. Thank you. And I believe your time is up, but we'll give you a minute for rebuttal because we asked you a lot of questions. I'll be very brief. I'd like to point the court to 28 U.S.C. 2202, which is the Uniform Declaratory Judgments Act, the statute that provides for necessary and further relief. I think this is the statute which gives authority for the remedy that the plaintiffs are asking for, even though I do believe that Montana's common law absolutely provides for the damages plaintiffs seek as well. Under the... Wait a minute, you're now talking about damages, not equitable relief. I'm sorry. I believe that Montana common law provides for the lower court to determine that federal is estopped from taking advantage of its wasting provision after it made a determination to settle. However, my point here, Your Honor, is that the Uniform Declaratory Judgments Act certainly does. Under the Declaratory Judgments Act, courts may determine whether or not an insurance company has acted in bad faith. The Spivey case, Spivey v. Travelers from the Eastern District of Pennsylvania, that's the exact issue that was discussed in that case, and it was proper relief. Second, if a court determines that there's bad faith in a Declaratory Judgments Act, which is a violation of a state law, the court has broad discretion to avoid whatever necessary and proper relief would make the parties equal again. So, is that a roundabout way of saying that in a Declaratory Judgment Action you can get damages that would have been available to you under state law? That's the point of U.S.C. 2202. The point of 2202 is to allow the court broad discretion to afford necessary and proper relief. In fact, in the Cardin Oil Case out of California, the court awarded attorney's fees even though an award of attorney's fees would not be allowed under state law. Now, here, I think the remedy we're seeking would be allowed under state law, absolutely, under the UTPA, but the Declaratory Judgments Act is broader, and when an insurance company has violated the law, the court has broad discretion to declare that it has done so, and then to afford the litigants necessary and proper relief. We appreciate the arguments of both parties. The case is submitted, and we will take about a seven or eight minute break at this point. Thank you.
judges: Marshall, Graber, Fisher